Joan Heffington
7145 Blueberry Lane
Derby, Kansas 67037
Telephone: (316) 788-0901
Facsimile: (316) 788-7990

FILED
U.S. DISTRICT COURT
DISTRICT OF KANSAS

'07  AUG 15  P 2:13

CLERK. U.S. DISTRICT COURT
BY:_____DEPUTY CLERK
AT WICHITA, KS

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF KANSAS

JOAN E. HEFFINGTON, Individually,      )
and On Behalf of Minor Son, G. H.      )
          Plaintiffs,      )
                             )
          vs.      )      Case No. *07 - 4095 - SAC*
                             )
DERBY UNIFIED SCHOOL DISTRICT (USD) 260      )
          Defendant.      )
_____ )

### A.  COMPLAINT

COMES NOW the plaintiffs, Joan E. Heffington, individually, *pro se*, and on behalf of her minor son,

G. H., and files this complaint against the defendant as follows:

### B.  PARTIES

0.   Plaintiff, Joan E. Heffington, individually and on behalf of minor son, G. H., is an individual

representing herself *pro se* with residence located at 7145 Blueberry Lane, Derby, Kansas 67037.

Plaintiff, Joan E. Heffington is hereinafter referred to as "Joan Heffington" and/or "Mrs. Heffington."

0.   Plaintiff, G. H., is the 13-year old minor son of plaintiff, Joan E. Heffington and her husband, Mark

Heffington (deceased).  Plaintiff, G. H., is hereinafter referred to as "G. H."

0.   Defendant, Derby Unified School District (USD) 260, is a school district comprised of a

superintendent, board of education members, and various local and state actors and entities engaged in

authoritative control and governance of the school district, as well as teachers, administrators and other

school officials in the Derby school system.  Defendant, Derby Unified School District (USD) 260, is a

corporate entity with principle offices located 221 E. Madison, Derby, Kansas 67037.  Derby Unified School

District (USD) 260 may be served by and through their administrative officer, Vicki Frazier, 120 E.
Washington, Derby, Kansas  67037.  Derby Unified School District (USD) 260 is hereinafter referred to as
the same, the "Derby school system," "the school," "the school system," or "Derby USD 260."

## C. FACTS PERTAINING TO THE PARTIES

0.    Plaintiff Joan E. Heffington is a United States citizen and a resident of the state of Kansas.  She is
the natural mother of G. H.  He is the third of four children in the Heffington family.

0.    G. H., is the 13-year old minor son of Joan Heffington and her husband, Mark, who died
unexpectedly in March, 2006.  G. H. is a United States citizen and a resident of the state of Kansas.

0.    Joan Heffington and her minor son, G. H., reside at 7145 Blueberry Lane, Derby, Kansas, which is
located in Sedgwick County, Kansas.  They have lived there for 13 years.

0.    G. H. has attended school in the Derby school system since he was in kindergarten.

0.    Joan Heffington is unemployed, but does volunteer work out of her home.  She is the C.E.O. and
founder (in 2003) of the Association for Honest Attorneys (A.H.A!), a non-profit organization dedicated to
discouraging litigation, improving the legal system and seeking justice for *all*.  The A.H.A! and its quarterly
newsletter are well-known on the local, state and national level.

0.    The defendant is comprised of teachers, school administrators, school officials, government actors
and/or entities of the United States, engaged in the business of governing the school system.  The defendant
has had full knowledge of this matter for the past four years, and was involved in the intentional emotional
distress toward plaintiffs in this matter.

## D. FACTS PERTAINING TO THE CASE

0.    Joan Heffington is the natural mother of G. H., who was born on September 12, 1993 to Mark and
Joan Heffington.  G. H. is the third of four children in the Heffington family.

11.  Mrs. Heffington had experienced problems during her pregnancy with G. H., and after his birth, a
blood clot was found in the placenta.

2.

12. From the time he was small, his parents observed that G. H. had to be reminded 4-5 times when asked to do something.

13. When G. H. was three years old, he began acting up at daycare. He was diagnosed with Attention Deficit Hyperactive Disorder (ADHD) and was prescribed Ritalin.

14. Mrs. Heffington had just begun to work overtime at her job at Boeing. When G. H. began exhibiting "zombie-like" behavior from taking Ritalin, Mrs. Heffington took him off of it after two months. Instead, she stopped working overtime, gave him extra attention, and G. H. had been fine ever since.

15. In the fall of 2003, G. H. was a fourth grader at Pleasantview Elementary School in Derby, located in Sedgwick County, Kansas.

16. On or about October 23, 2003 during conferences, G. H.'s teacher told Mrs. Heffington that he was having trouble with his grades. She said she didn't think he would make it to the fifth grade, and blamed the No Child Left Behind Act.

17. G. H.'s teacher was unaware that he had ADHD, even though Mrs. Heffington had filled this out on school forms. Irregardless, the teacher told Mrs. Heffington that she was putting G. H. on a Student Improvement Plan so he could improve.

18. Mrs. Heffington and her husband were distressed. They decided they needed to go to school with G. H., to try and figure out why he was having difficulty. They didn't want him to fail in school.

19. On or about October 26, 2003, Mrs. Heffington began coming to school twice a week and G. H.'s father came once a week. They sat next to G. H. during math.

20. During the first week, Mrs. Heffington discovered that G. H. needed specific, one-on-one reminders when instructions were given for an assignment or tests.

21. She asked his teacher if she (the teacher) could give him reminders, but she refused. The teacher told Mrs. Heffington that she could not give G. H. specific reminders unless he was on an Individual Education Plan (hereinafter referred to as IEP).

22. At that time, Mrs. Heffington did not know what an IEP was. The teacher explained the meaning

3.

of an IEP, but Mr. Heffington did not want G. H. to be on this. He feared he would be labeled.

23.   On or about October 28, 2003, another teacher told Mrs. Heffington that G. H. could be put on something called a 504-plan which would give him the little extra help he needed. Mrs. Heffington asked the school principal if he could be put on this.

24.   At this time, Mrs. Heffington didn't realize that a 504-plan pertained to a law, Section 504 of the Rehabilitation Act of 1973 (hereinafter referred to as "Section 504" or "504 plan.") This was not explained to her by the school system.

25.   The principal reluctantly agreed to begin testing G. H. for a 504-plan. She told Mrs. Heffington it was going to take several months to determine whether he could qualify.

26.   From October to late December, 2003, Mrs. Heffington came to school twice a week and G. H.'s father came once a week. They sat next to G. H. during math, gave him the reminders he needed when the teacher gave instructions for assignments and/or tests, and encouraged him.

27.   G. H.'s grades improved during the time his parents sat with him in the classroom.

28.   In January, 2004, Mr. and Mrs. Heffington stopped coming to school with G. H. He had been progressing, and they trusted that his 504 plan testing would be completed soon.

29.   During conferences in February, 2004, G. H.'s teacher told Mrs. Heffington he was doing well.

30.   On or about April 18, 2004, G. H. flunked a science project that both of his parents had helped him with. He couldn't remember to follow the instructions in a little green book the teacher had given out during conferences in February.

31.   The teacher had periodically told the class to follow the instructions in the little green book; however, she never gave G. H. a specific reminder, one-on-one, so that he would remember.

32.   It was at this time that the school told Mrs. Heffington that they had stopped testing G.H. for a 504 plan several months earlier, but she had never been advised. At this time, that the principal told Mrs. Heffington that she had to put a request for 504 testing for G. H. in writing.

33.   Mrs. Heffington was distraught that the school had never told her this back in October when they

4.

first began testing G.H.   She asked the school principal for a copy of any paperwork pertaining to what a 504 plan was, and the principal said she didn't have anything.  She told her she could contact administration and maybe they had this.

34.  On or about April 21, 2004, Mrs. Heffington submitted a written request to Derby USD 260 to ask that G. H. be put on a 504 plan.  She had also submitted a report from their family doctor which stated that  G.H. was ADHD and had a processing disorder.

35.  The school then intentionally prolonged the process out further, by telling Mrs. Heffington they would have to wait until the beginning of the next school year in August, 2004 to make a determination.

36.  Mrs. Heffington visited with school administration in April, 2004, who gave her a copy of Section 504 (EXHIBIT A).  Mrs. Heffington tried calling the phone number listed for the Office of Civil Rights several times, but it was incorrect.  A recording continued to state that the number was no longer in service.

37.  This form was updated a year later by the Derby school system to correct the phone numbers for the Office of Civil Rights, and to add the fact that a written notice of appeal must be filed within 30 days to challenge the school committee's actions on your child's 504-plan.

38.  Mrs. Heffington later learned that per 34 CFR Section 104, the school system had procedurally violated Section 504, since they failed in their duty to explain or provide a copy of Section 504 rights to Mrs. Heffington in October, 2003 when they began testing G. H.

39.  Mrs. Heffington realized that in October, 2003, the school system had no employee to coordinate compliance with Section 504 (34 CFR Section 104.7a), nor did they have grievance procedures to resolve complaints of discrimination (34 CFR 104.7b).  These were implemented in August, 2005 when the school system updated their form (EXHIBIT B.)

40.  In early 2004, a psychologist who was treating Mrs. Heffington's older son suspected that G. H. might have Asperger's Syndrome.  Mrs. Heffington advised Derby school administration about this in approximately May, 2004.

41.  At a school administration meeting in April/May, 2004, an administrative official agreed that the

5.

school had probably engaged in procedural violations by not informing Mrs. Heffington of her rights under Section 504. He told her that it only took about three days to get a student on a 504-plan. Mrs. Heffington wondered why they had been dragging this matter out intentionally.

42. The defendants and others had advised Mrs. Heffington that there was no federal funding for a 504 plan, and this was the reason the school system did not want to put G. H. on one.

43. In April, 2004, the school system told Mrs. Heffington that G. H. should be further tested for Asperger's Syndrome, as justification for putting him on a 504-plan. Mrs. Heffington found out that Heartspring was the only medical facility in the Wichita area that could test a child for Asperger's Syndrome. They said it would be nine months before G. H. could be tested, and she so advised Derby USD 260.

44. Mrs. Heffington told the school administrator that doctors advised there was no medicine that can be given to a child with Asperger's Syndrome.

45. The school administrator wanted her to try G. H. on strattera anyway, which is a medicine that is given to children who are ADHD. Mrs. Heffington didn't feel it was needed, but gave this medicine to G. H. for a period of 4-5 months in 2004. It caused him to become subdued, so she discontinued it.

46. In May, 2004, Mrs. Heffington visited the legislature in Topeka, Kansas on another matter. During that time, she was told by a state legislator that out of approx. $9340 allocated per child in the state of Kansas for education, less than 60 cents reached the classroom level.

47. Mrs. Heffington was outraged, and didn't realize at the time that Derby USD 260 was one of the litigants involved in the big education finance lawsuit against the state.

48. On or about August 18, 2004, the school called a meeting with Mrs. Heffington to review the need for G. H. to be on a 504-plan. School had barely started, and the principal, teachers, and school psychologist all agreed in the meeting that G. H. didn't need to be on a 504 plan.

49. Mrs. Heffington was further distressed that G.H.'s need for para assistance had already been proven. She told them he qualified as an individual with a disability under Section 504 because he had a mental impairment which limited the major life activity of learning due to his ADHD and possibly

6.

Asperger's Syndrome.

50. The school ignored this, and refused to put G. H. on a 504-plan. Mrs. Heffington suffered more emotional distress and mental anguish.

51. The school principal continued to cause emotional distress to Mrs. Heffington. In early December, 2004, Mrs. Heffington faxed the school system and threatened litigation for their refusal to put G.H. on a 504-plan.

52. Shortly thereafter, Derby USD 260 finally agreed that G. H. would be placed on a 504-plan. The school had an additional teacher/aid in G. H.'s fifth grade class who was aware of his special needs. Both of his teachers tried to assist in giving G. H. the reminders he needed to succeed.

53. G. H. did well through the end of May, 2005. Mrs. Heffington remained involved with his class to ensure that this happened.

54. In August, 2005, G. H. entered the Derby Sixth Grade Center. Mrs. Heffington knew there would be problems with numerous teachers who, either out of negligence or arrogance, might fail to give him the reminders he needed to succeed in his classes.

55. On December 6, 2005, Mr. and Mrs. Heffington met with the principal and several of G. H.'s teachers to discuss his 504-plan. Mrs. Heffington insisted in writing that he needed a paraprofessional to give G.H. specific reminders in his classes, in case his teachers failed to do this.

56. On December 6, 2005, the school system refused to modify G.H.'s 504 plan to include the para assistance he needed. Mrs. Heffington was not aware that the computer teacher and the science teacher were missing from this meeting, and G.H.'s grades later dropped in both of these classes.

57. Mrs. Heffington could see that the 504 plan as written was not working, and asked that it be modified to include para assistance when G.H.'s grades dropped. The Derby school system refused.

58. On December 12, 2005, Mrs. Heffington spoke at the Derby B.O.E. meeting about ways to ensure that education money gets down to the classroom level for the needs of the children. She presented a letter she had written to 12+ Kansas school districts (EXHIBIT C).

59.  Derby USD 260 was the only district to respond; however, they ignored her requests.

60.  G. H. was later diagnosed by Heartspring with a mild case of Asperger's Syndrome.  The Derby school system never asked Mrs. Heffington for this documentation.

61.  During the 2005-2006 school year, G. H. was flunking his computer class, and Mrs. Heffington came to school to try and encourage him in this class.  The teacher had been unaware that G.H. needed specific reminders under his 504 plan.  His grade in science also fell for the same reason, and G. H. was greatly distressed when he didn't think he would pass his computer class.

62.  During this time, G. H. made frequent remarks to his mother that he hated school, and wished he didn't have to go.

63.  On or about August 16, 2006, G. H. began the seventh grade at Derby Middle School.  Mrs. Heffington again met with his teachers and school administrators to discuss G.H.'s 504 plan.

64.  Derby Middle School teachers wanted to try numerous ideas in an effort to help G. H. achieve success in his classes without modifying his 504-plan to include para assistance.  They all failed to work for any length of time, and G. H. still struggled.

65.  Since G. H. was getting older, Mrs. Heffington did not want to embarrass him by continuing to come to school to sit with him and give him the specific reminders he needed.  She was also experiencing more severe health problems during this time.

66.  Mrs. Heffington sent e-mails and other correspondence to the defendants, and filed an OCR complaint to try and get G.H. the para assistance he needed in school.

67.  On October 16, 2006, Mrs. Heffington filed a grievance against the school system challenging their actions of the school system for failure to modify G.H.'s 504 plan to include para assistance.

68.  On October 19, 2006, Mrs. Heffington attended school conferences with Guy and his teachers.  The school system had been trying to get other children to assist G.H. in class, but their efforts had failed (EXHIBIT D.)

69.  On November 9, 2006, the school system denied Mrs. Heffington's notice of appeal to modify

G.H.'s 504 plan to include para assistance. Mrs. Heffington spoke with school administration on November 13, 2006, and told them she didn't think she was going to pursue this any further, due to the overwhelming stress affecting her existing health problems. At this time, she thought the school was trying to give G. H. what he needed.

70.  On or about December 1, 2006, the school called Mrs. Heffington to demand that she come in for another meeting on G. H.'s 504 plan. They wanted her to sign that she agreed with the 504 plan that was in place; however, she refused.

71.  Fully aware that Mrs. Heffington was facing the stress of major (colon) surgery in a few days, a school counselor in this meeting threatened to take G. H. off his 504 plan completely (EXHIBIT E).

72.  Mrs. Heffington had been suffering heart problems, including mitrol valve prolapse, and experienced acute anxiety that afternoon as a result of this stressful meeting.

73.  Mrs. Heffington then informed the principal she did not want to attend any more meetings of this nature. She told him she preferred these to be done over the phone, and the principal agreed to accommodate her in this regard.

74.  On February 1, 2007, the OCR complaint filed by Mrs. Heffington was denied.

75.  During the 2006-2007 school year, G. H. had to go to individual tutoring in the mornings two-four times a week, and again after school on Tuesday and Thursday when after-school tutoring was offered. He had to do this to keep from flunking several classes, including English and Math.

76.  G. H. was greatly distressed, because he couldn't remember which classroom he was supposed to go to or when he needed to be there, and he was continually stopped in the halls by teachers. This went on for several months.

77.  The defendants were fully aware of that Mr. Heffington had passed away, and Mrs. Heffington's health problems were severe, including four surgeries in five months (October, 2006 to March, 2007). They knew by her correspondence that there were periods she couldn't drive and would have to make special arrangements for G.H.'s tutoring because he rode the bus. They didn't care, and continued to inflict

9.

emotional distress on the plaintiffs.

78. G. H. continued to mention to his mother and others that he hated school. He suffered low self-esteem due to the emotional distress caused by the defendant (EXHIBITS D & E.)

79. On or about May 22, 2007, G. H.'s science teacher accused G. H. of tearing down decorations in his classroom. After berating G. H. in front of his classmates, he called Mrs. Heffington and told her he was not going to allow G. H. to turn in his final paper that he had forgotten to bring to class.

80. This was yet another discriminatory act, because if G. H. had been given the appropriate accommodations he needed under Section 504, this incident would not have occurred.

81. This accusation was later found to be false and unwarranted. A neighbor's daughter later commented to Mrs. Heffington that even she had heard about the science teacher yelling at G. H., as it had gotten around school.

82. The teacher's verbal and mental abuse toward G. H. was outrageous, and he refused to apologize. Mrs. Heffington deemed this to be yet another example of non-compliance with federal law by the Derby school system, and inappropriate education.

83. On or about May 23, 2007, Mrs. Heffington called Derby USD 260 school officials, e-mailed the principal of Derby Middle School and called their counsel. She threatened litigation again, asking that G. H.'s 504 plan be modified so he could be given para assistance for the upcoming school year (2007-2008). She did not want to have to go through this same issue with the school system for the next five years until G. H. graduated.

84. The defendants failed to respond, and made no effort to contact Mrs. Heffington from May 24, 2007 through early August, 2007.

85. On or about August 6, 2007, Mrs. Heffington called Derby USD 260 to inquire as to whether they were going to give G. H. the para assistance he needed in school.

86. The defendants continued their arrogance and failed to timely respond.

87. From December 6, 2005 until the present, Mrs. Heffington has continued to try and work with

10.

Derby USD 260 to modify G. H.'s 504-plan to give him para assistance in the classroom if his grades began to drop. They have refused, choosing instead to cause plaintiffs continued emotional distress.

88.  The school education funding lawsuit was settled in 2005, and Derby USD 260 gave teachers a raise and reduced classroom sizes for their benefit.. However, the defendants have still failed to distribute funds down to the classroom level to meet the needs of G. H. and other children.

89.  Because the defendants refused to provide G. H. with the para assistance he needed, they violated his guarantee of a free appropriate education, and were non-compliant with Section 504 of the Rehabilitation Act of 1973.

90.  The school system discriminated against G. H. because they are a recipient of federal funds, and they denied G. H. the opportunity to participate in or benefit from an aid, benefit or service (para assistance) which is afforded students with disabilities and/or equal to that afforded others.

91.  Mrs. Heffington had spoken to the B.O.E. and advised Derby USD 260 on several occasions that December, 2006, she had read in a book by Kevin Trudeau that school systems are given $500 for each child that is on medication.

92.  By denying and/or failing to hire paraprofessionals to assist G. H. in classes as needed, the defendants failed to adequately distribute education dollars down to the classroom level for the benefit of G.H. and other children with special needs, thereby denying them a "free appropriate education" and violating Section 504 of the Rehabilitation Act of 1973.

### E.  LAW AND ANALYSIS

Defendant, Derby Unified School District (USD)260  violated laws, statutes, ordinances and regulations, including but not limited to:  Section 504 of the Rehabilitation Act of 1973 (hereinafter called "Section 504"), and plaintiffs' guaranteed right to a free appropriate education under the law (Section 504/IDEA).  The defendants acts and failures to act, denied G. H. a free and appropriate education, and denied his rights under Section 504, and caused emotional distress to the plaintiffs.  Plaintiffs are justified in alleging each of the following claims against the defendants.

11.

## F.   CAUSES OF ACTION

### 1.   Section 504 of the Rehabilitation Act of 1973

93.  Plaintiffs incorporate by reference paragraphs 1 through 92 of this Petition.

94.  The conduct of the defendants  in communicating, corresponding and meeting together to deny G. H. reasonable accommodations under Section 504 to convince Mrs. Heffington that G. H. did not have a right to para assistance under Section 504 constitutes a violation of Section 504.

95.  The conduct of the defendants  in corresponding and meeting together to try and convince Mrs. Heffington that G. H. was being given a free appropriate and/or suitable education without the para assistance he needed, and their deliberate failure to modify his 504-plan to include para assistance constitutes a violation of Section 504.

96.  By participating in the above communications and meetings for almost two years and refusing to provide para assistance and modify G. H.'s 504 plan, the defendants acted with the intent to deny G. H. his rights under Section 504 and his right to a free appropriate education, having full knowledge that such acts were substantially certain to result in injury and detriment to the plaintiffs.

97.  The conduct of the defendants constitutes a violation of Section 504 of the Rehabilitation Act of 1973 and G. H.'s right to a free appropriate education.

98.   As a result of the defendant's aforementioned violations, plaintiffs have been damaged in excess of $75,000.00.

WHEREFORE, plaintiffs respectfully request judgments of the court against the above named defendants awarding to plaintiffs (i) damages in excess of $75,000.00 for each defendant; (ii) pre- and post-judgment interest; (iii) costs, including reasonable attorney fees, for this action; and (iv) any other relief deemed just and equitable by the court.

### 2.   Emotional Distress

99.  Plaintiffs incorporate by reference paragraphs 1 through 98 of this Petition.

100.  The conduct of the defendants in corresponding and meeting together to convince Mrs.

Heffington that G. H. didn't need para assistance, when in reality then didn't want to accommodate him in this regard because there was no federal funding for 504 plans, constitutes emotional distress

101. The conduct of the defendants to drag this matter out unnecessarily, all the while knowing that Mrs. Heffington had become a widow, was incurring health problems, undergoing numerous operations, and trying to care for three children, constitutes emotional distress.

102. The conduct of the defendants to drag this matter out unnecessarily to cause G. H. to become distraught, to lower his self-esteem, and to hate school constitutes emotional distress.

103. At all relevant times, the defendant's participation in communications and meetings to deny G.H. para assistance to help him succeed was willful, and with full knowledge that such conduct was substantially certain to result in injury and emotional distress to Mrs. Heffington and G. H.

104. The conduct of the above named defendants to conceal information concerning a 504 plan, and then their refusal to comply with federal law and accommodate G. H. with the para assistance he needed represents a knowing misrepresentation of the truth and concealment of material facts to induce Mrs. Heffington and G. H. to act to their detriment.

105. The conduct of the above named defendants constitutes emotional distress.

106. As a result of the defendants' intent to cause emotional distress, plaintiffs have been damaged in excess of $250,000.00.

WHEREFORE, plaintiffs respectfully request judgments of the court against the above named defendants awarding to plaintiffs (i) damages in excess of $75,000.00 for each defendant; (ii) pre-and post-judgment interest; (iii) costs, including reasonable attorney fees, for this action; and (iv) any other relief deemed just and equitable by the court.

Respectfully submitted,

By: _____
JOAN E. HEFFINGTON, Individually, *pro se*
and On Behalf of Minor Son, G. H.
7145 Blueberry Lane
Derby, Kansas 67037
Ph: (316) 788-0901
Fx: (316) 788-7990

13.

# DEMAND FOR JURY TRIAL / *TRIAL DESIGNATION*

Plaintiff respectfully requests that the issues in this matter be heard by a jury, *In the city of Topeka, KS.*

Respectfully submitted,

By: _____

(JOAN E. HEFFINGTON, Individually, *pro se*
and On Behalf of Minor Son, G. H.
7145 Blueberry Lane
Derby, Kansas  67037
Ph:  (316) 788-0901
Fx:  (316) 788-7990

## CERTIFICATE OF SERVICE

I hereby certify that on this 15th day of August, 2007, a copy of the above and foregoing Complaint and summons was filed with the U. S. District Court for the District of Kansas, and a copy was sent certified, return receipt and  properly addressed, to:

Derby Unified School District (USD) 260
Attn:  Vicki Frazier
221 E. Madison
Derby, Kansas  67037

_____

JOAN E. HEFFINGTON, Individually, *pro se*
and on Behalf of Minor Son, G.H.
7145 Blueberry Lane
Derby, Kansas  67037
Ph:  316-788-0901
Fx:  316-788-7990

14.

EXHIBIT A

DERBY USD 260

## WRITTEN CONSENT
## SECTION 504 STUDENT AND PARENT RIGHTS

School: _Pleasantview_                              Date: _4/22/04_

    The following is a description of student and parent rights granted by federal law. The intent of the law is to keep you fully informed concerning decisions about your child and to inform you of your rights if you disagree with any of these decisions.

**YOU HAVE THE RIGHT TO:**

1. Have your child take part in, and receive benefits from public education programs without discrimination based on a disability.

2. Have the school advise you as to your rights under federal law.

3. Receive written notice with respect to identification, evaluation, or placement of your child.

4. Have your child receive a free appropriate public education. This includes the right to be educated with other students without disabilities to the maximum extent appropriate. It also includes the right to have the school make reasonable accommodations to allow your child an equal opportunity to participate in school and school-related activities.

5. Have your child educated in facilities and receive services comparable to those provided students without disabilities.

6. Have your child receive accommodations under Section 504 of the Rehabilitation Act of 1973.

7. Have evaluation, educational, and placement decisions made based upon a variety of information sources, and by individuals who know your child, the evaluation data, and placement options.

8. Have transportation provided to a school placement setting at no greater cost to you than would be incurred if the student were placed in a program operated by the school.

9. Give your child an equal opportunity to participate in non-academic and extracurricular activities offered by the school.

10. Examine all records relating to decisions regarding your child's identification, evaluation, educational program, and placement.

11. Obtain copies of educational records at a reasonable cost unless the fee would effectively deny you access to the records.

12. Receive a response from the school to reasonable requests for explanations and interpretations of your child's records.

13. Request amendment of your child's educational records if there is reasonable cause to believe that they are inaccurate, misleading or otherwise in violation of the privacy rights of your child. If the school refuses this request, it shall notify you within a reasonable time, and advise you of the right to a hearing.

14. Request mediation or an impartial due process hearing related to decisions regarding your child's identification, evaluation, educational program, or placement. You and your child may take part in the hearing and have an attorney represent you.

15. File a local grievance or complaint to the Office for Civil Rights in Kansas City, Missouri. The office is part of the U.S. Department of Education. The regional office is located at 10220 N. Executive Hills Blvd., 8th Floor, Kansas City Missouri 64153, (846)891-8103, (816)374-6461 TDD, (816)374-6467 FAX.

The person at the school who is responsible for Section 504/ADA compliance is:

_Jill Cailrey_____          _788 8555_____
Section 504 Coordinator                                        Telephone Number

I give written consent to have my child evaluated for possible Section 504 eligibility.

_Joan E Heff_____,          _4/22/04___
Parent Signature                                       Date

Evaluation Procedures:

| Evaluation | To be performed by |
| --- | --- |
| Obtain information from... | J. Cailrey |
| access review | |
| Observation | C. Kazuua |
| work samples | C. Tauber |

- 14b

# DERBY USD 260
## PARENT/STUDENT RIGHT IN IDENTIFICATION,
## EVALUATION AND PLACEMENT
### (Section 504 of the Rehabilitation Act of 1973)

The following is a description of the rights granted by federal law to students with disabilities. The intent of the law is to keep you fully informed concerning decisions about your child and to inform you of your rights if you disagree with any of these decisions. Please keep this explanation for future reference.

You have the right to:

1. Have your child take part in, and receive benefits from public education programs without discrimination based on a disability.
2. Have the school advise you as to your rights under federal law.
3. Receive written notice with respect to identification, evaluation, or placement of your child.
4. Have your child receive a free appropriate public education. This includes the right to be educated with other students without disabilities to the maximum extent appropriate. It also includes the right to have the school make reasonable accommodations to allow your child an equal opportunity to participate in school and school-related activities.
5. Have your child educated in facilities and receive services comparable to those provided students without disabilities.
6. Have your child receive accommodations under Section 504 of the Rehabilitation Act of 1973.
7. Have evaluation, educational, and placement decisions made based upon a variety of information sources, and by individuals who know your child, the evaluation data, and placement options.
8. Have transportation provided to a school placement setting at no greater cost to you than would be incurred if the student were placed in a program operated by the school.
9. Give your child an equal opportunity to participate in non-academic and extracurricular activities offered by the school.
10. Examine all records relating to decisions regarding your child's identification, evaluation, educational program, and placement.
11. Obtain copies of educational records at a reasonable cost unless the fee would effectively deny you access to the records.
12. Receive a response from the school to reasonable requests for explanations and interpretations of your child's records.
13. Request amendment of your child's educational records if there is reasonable cause to believe that they are inaccurate, misleading or otherwise in violation of the privacy rights of your child. If the school refuses this request, it shall notify you within a reasonable time, and advise you of the right to a hearing.
14. Request mediation or an impartial due process hearing related to decisions regarding your child's identification, evaluation, educational program, or placement. You and your child may take part in the hearing and have an attorney represent you.

    If you wish to challenge the actions of the schools' 504/ADA committee in regard to your child's identification, evaluation, of educational placement, you should file a written Notice of Appeal with the district's 504/ADA coordinator within 30 calendar days from the time you received written notice of the committee's actions. A hearing will be scheduled before an impartial hearing officer and you will be notified in writing of the date, time, and place for the hearing.

# DERBY USD 260
## PARENT/STUDENT RIGHT IN IDENTIFICATION,
## EVALUATION AND PLACEMENT
### (Section 504 of the Rehabilitation Act of 1973)

(14. continued)

On 504/ADA matters other than your child's identification, evaluation, and placement you have a right to file a complaint with the district's 504/ADA coordinator:

> Assistant Superintendent / Human Resource
> 120 E. Washington
> Derby, Kansas   67037
> (316) 788-8415

The coordinator will investigate the allegations to the extent warranted by the nature of the complaint in an effort to reach a prompt and equitable resolution.

15. File a local grievance or complaint to the Office for Civil Rights in Kansas City, Missouri. The office is part of the U.S. Department of Education. The regional office is located at 8930 Ward Parkway, Suite 2037, Kansas City, Missouri, 64114, Phone: (816)268-0550, TDD: (800)437-0833, FAX: (816)823-1404, E-Mail: *OCR_KansasCity@ed.gov*.

mb revised 1/2005

EXHIBIT C

Supt. Winston Brooks                                                                    December 12, 2005
Wichita U.S.D. 259
201 N. Water St.
Wichita, KS 67202-1292

Dear Supt. Brooks/B.O.E. Members:

This letter is in regard to the "new money" allocated by the state for education funding. As we were involved in this issue with our legislature last year, we wanted to follow up and ensure that money is getting down to the classroom level to the needs of the children. We ask for your consideration of the following:

1. Elimination of all fees to enroll children in school at the beginning of the year – so that they receive a "free and appropriate education" guaranteed them by law;

2. Hire paras to assist students in all grade levels who are on SIPs and 504 plans whether the law requires it or not – do more than "just enough to get by" (don't we expect this from our kids?)

3. Cover the costs of field trips and other activities so that parents and children don't have to be burdened with so many fundraisers;

4. Revise the curriculum so that 6th, 7th & 8th grade students can take band and P.E. at the same time – it doesn't make sense to start a child on a band instrument in 5th grade, when he will likely give it up in the 6th grade because he is required to choose between the two;

5. Competitively bid the purchase of books and other materials to cut costs (some books from McGraw-Hill are $100; also, have the high school print its own yearbooks which now cost parents $50);

6. Find ways to make elementary school fun – bring an animal to school, play music at lunch time, fix up the cafeteria, have moms come once a week and make pancakes in the morning, have a funny joke day and give a prize - give kids something to look forward to when they come to school;

7. Relax the rules and use common sense on violations (i.e., hugging a friend in the hall way should not be considered "sexual contact;" spontaneous laughter should not be deemed "contributing to a hostile environment," and kids should not be written up for bullying because they played a joke);

8. Don't single kids out who have forgotten their lunch money by making them eat an alternative lunch at the end of lunch period with only three minutes left to stuff it down their throat (children should not be punished for their parents' neglect);

9. Offer high school courses in basic finance so that kids can learn how to handle money and charge cards, vo-tech courses in the building trades so they'll always have a job, and intelligent design so they can learn about faith and hope - it might even save their life some day;

10. Explain your district's efforts to reduce and/or eliminate administrative costs through attrition or other means, so that there will be no excuse to increase taxes for education in the future.

Some of these items may already be in place, and for this we are grateful. We are asking whether these items can be implemented; if so, when; and how much will be allocated. If your district would choose not to implement an item, please tell us why. Your response to each item is requested no later than January 5, 2006.

Sincerely,

"Jesus said, "Let the children come to me and do not hinder them;
for to such belongs the kingdom of heaven." *Matthew 12:15*

Joan Heffington, C.E.O.
Association for Honest Attorneys

10/19/06 — Went to Guy's conference at 10:30 today.
A lot of his teachers were present, + by now, I'm sure
they knew I had filed a complaint. All I was asking
for was an awareness of his son so that the school(s)
will comply with the law + his needs in the future.
He has a D in Math, + Mrs. Hannerstiel had tried to
sit 2 boys on either side of him to help him (becuz
there isn't a para in this class.) But, she said, Guy was
refusing their help + rolling his eyes, + she asked him
why was he doing this? He didn't say anything for a while,
then said it was because those boys hate him. You could
have heard a pin drop, as they realized their efforts to
try + use students to help him weren't working. Guy said
the boys had told him he was "annoying." Mrs. Mock spoke
before this, that Guy had a D in Computer Science. He
had a lot of bellringers that she never got from him + asked
he why he wasn't doing these in-class assignments. He
said he did them + he had them, but apparently didn't
realize he had to turn them into a box in the room. She
said she reminded them at least twice, but I asked if
she would specifically remind Guy on these so he can
get his grade up. Atlee, Draney + Rucker all said Guy had
been doing well (B's in their class), + Mrs. Smith said he
had an A in band. Guy told her he didn't have 2 sheets of
music + she said she'd get them. I had told Mrs. Hannerstiel
earlier that becuz there was no para, he had gotten to the
point of frustration not trying. I told them I have 3
s why he probably wasn't trying. I can't pick Guy up if he stays
suggesties coming. They are going to get him a pass off
after for tutoring. Math teacher before school for help.
he bus to go see Trevor Broz to help him in Math.) On
they also wanted to explain to Guy how this pass
the way home, I tried off the bus. He told me this
would work when he got pressure on him (I think he
was going to put a lot of to go there.) He
meant trying to remember every morning what I get for having
said something like: "That's
ADD..."

12/15/06 - I also wanted to note the quick meeting Derby Middle School called last Friday (12/9/06) to try and get me to sign up that I agreed with the 504-plan they had in place. We rehashed Guy's inability to remember (without reminders) where he was supposed to go and when for tutoring in the morning and afternoon, and how it was stressing him out. They just don't understand what a processing disorder means, but having lived with it all his life, I know it well. I have to tell him sometimes 4-5 times to get the response I need, and once he gets it, he's on the spot doing it (Mr. Atlee also noted this). I suggested that they give him a permanent morning pass so he can get tutoring and they will, but this past week when I was in for surgery, even though I had told him several times to go to Math in the morning as soon as he got off the bus, he hadn't done it all week because, he told me, they had gotten all mad when he did that before (mid-Nov. when we first started this). When I explained that I had a meeting with them last Fri. to straighten it all out, then he understood and said he would go this morning. Guy is only struggling in Math and English so the teachers will work together in the a.m. to see that he gets help in one or the other to succeed. But then Connie (Hahn?) the counselor, tried to get me to sign up to her notes (I was in such a hurry that I didn't keep a copy) that Guy was lacking organization or something to that affect, never mentioning that I also said in the meeting that I wanted his 504-plan amended to give him para assistance when his grades start dropping and would have to file the OCR complaint because they were refusing. Connie then threatened me in a quite hateful tone: "Would you like it if we just took him OFF the 504?" I said he was already on one, but felt this was clear retaliation and a threat. Mr. Martins intervened at that point to try and calm things down, and I said that I would sign the forms after I'd reviewed them so would need a copy. I was going to take them with the understanding that I might make changes, and felt certain this was understood. Mr. Martins had me write down that I would agree to come back and sign them by 2:30 p.m. that day. I then said (and all could hear) that I just wanted to make sure the notes said what I thought they should say Guy needed and not just what they (the school) thought he needed. We all left and I went to the office while Connie made a copy of her two page form. I told her I would bring it back with any changes I had, and she said, "Oh, you can't make any changes." But that was my whole reason for taking them in the first place, I told her, and she said, "Well, we'll see!" I was so stressed this afternoon, as I had a busy meeting this morning at 10:30, was going to have to rush downtown, and then was going to have to rush back and file the OCR and return their form with my changes. I resent this obviously stressful situation the school was putting me in, especially since they knew the history of Guy's 504-situation for the last 3 years and how we almost ended up in litigation just trying to get him on a 504 in the first place, and now they're not giving him what he needs under it. They also knew very well that I was going into colon surgery on Monday, which is why they were trying to switch all his tutoring to the mornings because they knew I couldn't drive for an anticipated two weeks. I resented this unneeded stress they intentionally put me under, knowing I have health problems and trying to get Guy taken care of. Back around Nov. 10-13, I had talked to Supt. Craig Wilford on the phone after I received their denial of my request to have his 504 amended to include para assistance when his grades dropped. I had told him then that I didn't think I could fight this battle due to my health problems and upcoming surgery, and that I felt the teachers were doing a good job of trying to help Guy get what he needed. It was shortly after this that I received a call from his English teacher that he was flunking English, and he was already doing tutoring after school Tue.-Thu. for math. Then I found out that was going well either. Guy tried to go in one morning when he got off the bus but he was too late, then neither he nor the English teacher could remember to give him a pass each day for the next day to come in the morning (CAN THEY SEE HE NEEDS REMINDERS???!!!!) Poor Guy was so stressed out he didn't know if he was coming or going. That is when I told him on Friday, Dec. 1 that I was going to come to school with him Mon. morning (Dec. 4) to make sure he had a pass for the whole week. So I came in on 12/4/06 and told Guy to wait in the hall, because I didn't want him to hear me tell them he couldn't remember that he was supposed to get a pass every day for tutoring in the morning (I didn't want to make him feel stupid.) I went in the office of the middle school and asked for a week-long pass, and they told me I couldn't have one for him, that the teachers would have to give it every day. I just said I wanted to see Mr. Martins, since I was tired of the rigamarole. Mr. Martins came out and gave me a week-long pass, but it is a major inconvenience having to get up in the mornings now, get the kids ready and now myself, and take Guy to school so he can have morning tutoring and also pick him up at 4:15 on Tue. and Thur., when the school system should be giving Guy what he needs during the school day – a "free and appropriate education," like everyone else. If this isn't continued discrimination, I don't know what is. The school system knows I have health problems and surgery next week, and this doesn't matter – by golly, they are not going to give Guy what he needs under a 504-plan come hell or high water, simply because it's not federally funded. I told Mr. Martins I may have to pursue this legally when I came back at 2:30 p.m. on 12/9/06, and he said he understood totally, and he would like to see paras in every class as well. I told him it looked like litigation was the only way to get Guy what he needed and other kids as well, due to the minimalization given students in our school system.